UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ALI MOUNIR NASSRALLAH,<br><br>　Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; and NAVIENT SOLUTIONS, LLC,<br><br>　Defendants. | Case No. 23-10859<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING NAVIENT SOLUTIONS' MOTION TO COMPEL ARBITRATION [24] AND GRANTING NASSRALLAH'S MOTION TO SEAL [26]**

Ali Mounir Nassrallah brought this case under the Fair Credit Reporting Act after discovering that his private student loan that was apparently settled in 2021 was still appearing on his credit report in 2022. Nassrallah sues two credit reporting agencies—Equifax Information Services, LLC and Experian Information Solutions, Inc.—as well as the private company that serviced his loan—Navient Solutions, LLC. Currently before the Court is Navient's motion to compel arbitration (ECF No. 24) and Nassrallah's motion to file the 2021 settlement agreement under seal (ECF No. 26).

For the reasons explained below, the Court will GRANT both motions.

## I. Facts and Procedural History

In October 2008, Nassrallah received a private Student Signature Loan, which was serviced by Navient. (ECF No. 1, PageID.7.) In 2021, the outstanding balance on that loan was waived pursuant to a settlement agreement that Nassrallah and Navient entered to settle claims Nassrallah brought under the Telephone Consumer Protection Act. (ECF No. 28, PageID.203.) However, in January 2022, Nassrallah discovered that this loan was still appearing on his credit reports from Equifax and Experian and was designated as a "charge off," meaning the debt may still be owed and may be delinquent. (ECF No. 1, PageID.8–9.); *see also Suri v. Wells Fargo Bank*, No. 21-10866, 2023 WL 3241938, at *6 (E.D. Mich. May 3, 2023) ("[A] 'charge off' is a term of art for credit providers and understood as writing off a debt as a loss because payment is unlikely." (citing Charge Off, Black's Law Dictionary (11th ed. 2019))). So Nassrallah filed this suit against Equifax, Experian, and Navient for allegedly failing to reasonably investigate his consumer dispute and reporting inaccurate information about his loan in violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x. (*Id.* at PageID.1.)

Navient responded with a motion to compel arbitration, claiming that under the terms of the promissory note that Nassrallah signed in 2008 he is required to arbitrate any disagreement arising from the loan. (ECF No. 24, PageID.155.) Nassrallah argues that the settlement agreement, which does not contain an arbitration clause, replaced the promissory note such that he is not required to

2

arbitrate this FCRA claim. (ECF No. 28, PageID.207.) He also filed a motion to seal the settlement agreement. (ECF No. 26.)

Both the motion to seal and Navient's motion to compel arbitration are pending before the Court, and the Court will address each in turn now, as no further argument is needed. *See* E.D. Mich. LR 7.1(f).

## II. Motion to Seal

Because the disposition of the motion to seal impacts the motion to compel arbitration, the Court will start there. *See* E.D. Mich. LR 5.3(b)(3)(C)(iii)(2) ("The court will not consider or rely on the unredacted version of . . . documents sought to be sealed . . . [if] the sealing motion [is] denied, unless the moving party promptly files the unredacted version.")

There is a longstanding and "'strong presumption in favor of openness' as to court records." *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 305 (6th Cir. 2016). Thus, a party that seeks to seal certain documents must meet a high burden, as "[o]nly the most compelling reasons can justify non-disclosure of judicial records." *Id.* And "even where a party can show a compelling reason why certain documents or portions thereof should be sealed, the seal itself must be narrowly tailored to serve that reason." *Id.* In other words, "[t]o meet this burden, the party must show three things: (1) a compelling interest in sealing the records; (2) that the interest in sealing outweighs the public's interest in accessing the records; and (3) that the request is narrowly tailored." *Kondash v. Kia Motors Am., Inc.*, 767 F. App'x 635, 637 (6th Cir. 2019). To make this showing, a party must therefore "analyze in detail, document by

3

document, the propriety of secrecy, providing reasons and legal citations." *Shane Grp.*, 825 F.3d at 305–06 (internal quotation marks omitted).

The Court notes at the outset that Nassrallah's motion is unopposed. And while it is not the paradigm of compliance with governing Sixth Circuit law, the Court nonetheless finds that the confidential settlement agreement satisfies the *Blue Cross* factors for sealing.

Start with the first factor. The Sixth Circuit "has always recognized the need for, and the constitutionality of, secrecy in settlement proceedings." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003). True, this rationale does not extend to protect the terms of completed settlement agreements. *Davis v. Alcoa, Inc.*, No. 17-13658, 2019 WL 3346075, at *1 (E.D. Mich. June 10, 2019). Nonetheless, Nassrallah contends, and the Court agrees, that it would be a violation of the confidentiality clause included in the settlement agreement if Nassrallah revealed the terms of the agreement. That represents a compelling interest in keeping the agreement private. *See, e.g.*, *Blakenship v. GuideOne Mut. Ins. Co.*, No. 19-710, 2022 WL 608177, at *9 (W.D. Ky. Mar. 1, 2022) ("The exhibits [to be sealed] also contain confidentiality provisions that may subject the parties to a claim of breach of the settlement agreements.") *aff'd sub nom. Blankenship v. Shelter Mut. Ins. Co.*, No. 23-5247, 2023 WL 6799581 (6th Cir. Oct. 16, 2023); *Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, No. 07-116, 2016 WL 9403903, at *1 (S.D. Ohio Aug. 3, 2016) ("[T]he interest of the parties to the settlement agreement in maintaining their settlement discussions in confidence is compelling . . . as is the

concern of the . . . parties that their public disclosure of the settlement agreement will subject them to a claim of breach of settlement agreement."). Therefore, the Court finds there is a compelling interest in sealing the settlement agreement.

Second, the public has no interest in the terms of the confidential settlement agreement between the parties. *See Tecnomatic S.p.A. v. ATOP S.p.A.*, No. 18-12869, 2023 WL 4679003, at *1 (July 21, 2023) (sealing information related to a settlement agreement in part because "the public has no interest in the terms of its confidential settlement agreement"); *Inhalation Plastics*, 2016 WL 9403903, at *1 ("[T]he matter to which this exhibit relates—a private settlement of a private dispute involving private entities—does not involve issues of great public concern."). And except for a relatively minor integration clause, the terms of the settlement agreement are "not necessary for the public to evaluate any judicial decision or to understand the result of this litigation." *Proctor & Gamble Co. v. Ranir, LLC*, No. 17-185, 2017 WL 3537195, at *3 (S.D. Ohio Aug. 17, 2017).

Finally, Nassrallah's request to seal is narrowly tailored. The settlement agreement Nassrallah seeks to seal is only six pages and contains only the terms of the settlement agreement. *See Jackson v. Gen. Elec. Aviation,* No. 19-629, 2020 WL 5290535, at *3 (S.D. Ohio Sept. 4, 2020) (finding a request to seal information related to settlement negotiations and "the terms of the settlement agreement itself" was narrowly tailored); *Inhalation Plastics, Inc.*, 2016 WL 9403903, at *1 (finding the request to seal was "narrowly tailored to limit public access to only a single exhibit").

For these reasons, Nassrallah's motion to seal is GRANTED.

5

### III. Motion to Compel Arbitration

Typically, "[b]efore compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). The Supreme Court has recognized, however, that parties can agree to arbitrate these "gateway" questions of arbitrability. *See Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010); *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021). "[I]f a valid [arbitration] agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019)

Nassrallah does not contest that he signed a valid arbitration agreement as part of his promissory note with Navient. (ECF No. 28, PageID.203.) But Nassrallah says that note no longer binds the parties, since the later settlement agreement contained an integration clause saying the settlement agreement was the whole agreement between the parties. (*Id.* at PageID.207.) Nassrallah contends, essentially, that the settlement agreement superseded the promissory note.

But this is a question for the arbitrator to answer. The arbitration agreement in the promissory note—which Nassrallah admits to signing, admits is valid, and admits could encompass FCRA claims (ECF No. 28, PageID.202)—contains a delegation clause that delegates questions "concerning the validity . . . of this

6

Arbitration Agreement" to the arbitrator (ECF No. 24, PageID.158 (citing ECF No. 22-2, PageID.143–144 (promissory note ¶¶ T.2, T.4))). More specifically, the arbitration clause states that "any legal claim, dispute or controversy . . . that arises from or relates in any way to this Note" is subject to arbitration and defines "claim" to include "disputes concerning the validity, enforceability or scope of this Arbitration Agreement or this Note." (ECF No. 24, PageID.158 (citing ECF No. 22-2, PageID.143–144 (promissory note ¶¶ T.2, T.4)).) This language clearly and unmistakably delegates the question of whether the arbitration clause remains valid to the arbitrator. Thus, "[a]s Plaintiffs' arguments do not specifically challenge the delegation provision, it is for the arbitrator, not the Court, to decide whether the Arbitration Agreement is valid in light of the Settlement Agreement." *Harris v. Equifax Info. Servs.*, No. 18-00558, 2019 U.S. Dist. LEXIS 65439, at *12 (S.D. W. Va. Apr. 17, 2019).

Nassrallah correctly points out that the Supreme Court recently clarified that the federal policy on arbitration "is about treating arbitration contracts like all others, not about fostering arbitration" and that Courts may not "devise novel rules to favor arbitration." (ECF No. 28, PageID.205 (quoting *Morgan v. Sundance, Inc.*, 596 U.S. 411, 412, 418 (2022)).) He urges the Court to look to "the plain language of the agreement" (*id.* at PageID.206 (quoting *Harbor Park Mkt., Inc. v. Gronda*, 743 N.W.2d 585, 588 (Mich. 2007)) and enforce the unambiguous contract "as written" (*id.* (quoting *Holland v. Trinity Health Care Corp.*, 791 N.W.2d 724, 727 (Mich. 2010)).

7

The Court will do so. The plain language of the arbitration agreement delegates questions of arbitrability to the arbitrator, so the Court will enforce it and compel arbitration.

Perhaps the settlement agreement would be the governing contract if Nassrallah had brought this as a breach of settlement claim. But he brought this as a FCRA claim. As Navient explains, "the settlement of the TCPA Action did not change the fact that the parties had a relationship established by the Promissory Note," and the FCRA claim arose from that relationship, since Navient "would not have reported information on the Loan but for the existence of the Promissory Note." (ECF No. 24, PageID.166.) So Nassrallah can be compelled to arbitrate this disagreement which arose from the promissory note.

## IV. Request to Stay

Both parties have requested that the Court stay the proceedings as to them if it finds that the dispute is subject to mandatory arbitration. (ECF No. 24, PageID.168; ECF No. 28, PageID.211.) Sixth Circuit case law also supports staying the case. *See Hilton v. Midland Funding LLC*, 687 F. App'x 515, 518 (6th Cir. 2017) (allowing district courts to stay cases pending arbitration if (1) the issue is arbitrable, (2) one of the parties applies for a stay, and (3) the party requesting a stay is not in default). Accordingly, because the Court finds the dispute is subject to mandatory arbitration, both parties have requested a stay, and neither party is in default, the Court will stay Nassrallah's claims against Navient pending arbitration. The Court

8

will address defendant Experian's motion to compel arbitration and related request for a stay in a separate opinion.[1]

## V. Conclusion

For the foregoing reasons, the Court GRANTS Nassrallah's Motion to Seal (ECF No. 26) and Navient's Motion to Compel Arbitration (ECF No. 24) and STAYS the case as to these parties, pending arbitration proceedings.

SO ORDERED.

Dated: February 2, 2024

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

---

[1] The Court will endeavor to resolve Experian's motion as efficiently as possible. Especially since the initial arbitration issue with Navient is likely to be resolved relatively quickly, given the existence of numerous cases addressing whether a settlement agreement like the one here displaces an arbitration provision in a prior agreement. *See, e.g., Hernandez v. Experian Info. Sols., Inc.*, No. 21-06998, 2022 WL 17098188, at *3 (C.D. Cal. Feb. 24, 2022); *Sommerfeld v. Adesta, LLC*, 2 F.4th 758, 762 (8th Cir. 2021).